DAVID A. BROWN, Plaintiff, *v.* WALTER F. BEDELL and Others, Defendants.*

Supreme Court, New York County, June 10, 1932.

* Affd., 238 App. Div. 812. See, also, 232 id. 158; 234 id. 90.

*Jenks & Rogers* [*Abraham Benedict* of counsel], for the plaintiff.

*Claude V. Pallister* [*Edmond B. Butler* of counsel], for the defendant Bedell.

*David Steckler*, for the defendant Davidow.

*David I. Shapiro*, for the defendant Eisenberg.

*Guggenheimer, Untermyer & Marshall* [*Edward T. McLaughlin* of counsel], for the defendants Alexander and others.

*Abberley, Bryde & Appleton* [*Edward D. Bryde* of counsel], for the defendant Robertson.

*Samuel R. Gerstein*, for the defendant Simon.

*Barron, Rice & Rockmore* [*George P. Halperin* of counsel], for the defendant Winston.

VALENTE, J. In this action tried before me plaintiff in his complaint alleges as a first cause that the defendants entered into a certain contract annexed; that thereby a joint adventure was created with three managers; that said managers with the consent of the other defendants delegated their powers to a single manager, Bedell; that the agreement was extended to January 2, 1930; that defendants borrowed of plaintiff the sum of $25,000 on September 16, 1931, made their note on September 17, 1931, and in consideration of $25,000 delivered the note to plaintiff; that no part of said note was paid except $9,722.16. The second cause is another count for a balance due, expressed in the archaic language of the ancient action of *indebitatus assumpsit* for money lent. The contract was in duplicate papers. One copy is signed by fourteen autographs of defendants, by a deceased defendant's autograph, and by defendant Simon, per defendant Eisenberg, who signed his name. All these signatories attached seals. The duplicate is signed by the autograph of defendant Lieberman, unsealed. The defendant Winston never signed either paper, but paid his subscription. The agreement is brief, and, as a proper construction of it is vital to the entire case, it is reproduced here in full: " The undersigned hereby form a syndicate for the purpose of dealing in the capital stock of the Broadway National Bank & Trust Company of New York. The syndicate shall be dissolved and terminate sixty days from the date hereof, but it may be terminated in the discretion of the managers prior thereto. Walter

E. Bedell, Myer Davidow and Louis Eisenberg are hereby appointed as managers and they shall have sole management in the conduct of the business and affairs of the syndicate with all usual and customary powers including the right to make or procure loans and to pledge any of said stock and/or the obligations of the participants hereunder; to pay all commissions and expenses of every nature, and for the account of the syndicate, to purchase, sell, sell short, repurchase, resell or hold shares of the capital stock of the Broadway National Bank & Trust Company to such amount, at such prices and in such manner as they may deem advisable, and generally to act in all respects as in their opinion may be to the best interests of the syndicate. The maximum commitment of the participants herein shall at no time exceed the sum of five thousand ($5,000.00) dollars. The managers hereof, as such, shall in no wise be liable for an error of judgment or mistake of law or fact. Said managers may participate in this syndicate and as such, with respect to their participation, shall enjoy all the rights, benefits and privileges and be subject to all the liabilities, debts and obligations hereby respectively granted to and imposed upon any other of the participants. This shall be binding upon the respective participants, their successors, executors, administrators and assigns, but no partnership relation shall arise therefrom. The liability of a participant in this syndicate shall not be increased by default of any other participant, the maximum individual liability being limited to the sum of five thousand (\$5,000.00) dollars. At the termination period hereinbefore mentioned, the managers shall distribute to the participants herein *pro rata*, in the respective proportions which their respective participations bear to the total participations herein, the shares or cash remaining in their hands and the participants shall share *pro rata* in the said shares, in the profits or losses of the syndicate after deducting the expenses incurred by the managers in conducting the transaction and the apportionment and distribution by said managers of the said shares, profits or losses shall be final and conclusive upon the participants. Dated New York, July 10, 1929.''

The signatures and seals of the subscribers then follow, together with the signed acceptance by the managers: '' The undersigned hereby accept the office of Managers specified in the instrument herein upon the terms and conditions therein set forth. Dated, July 10th, 1929.'' The note in suit is signed only by defendant (Bedell) as chairman of the syndicate.

It is contended by the syndicate subscribers other than the managers that the latter are to be regarded as trustees or *quasi* trustees and the subscribers beneficiaries of the trust, and in borrow-

ing the money from plaintiff the chairman and his associate managers pledged their own credit and not that of the syndicate members. The plaintiff, on the other hand, argues that the subscribers all constitute a partnership or joint adventure with the managers acting merely as agents for the syndicate. If the former interpretation is right, it is unnecessary to consider many of the other legal questions in bar of the action raised. The fundamental question is whether or not the contract establishes a so-called Massachusetts trust within the principles of the decision in *Byrnes* v. *Chase National Bank* (225 App. Div. 102; affd., 251 N. Y. 551). The agreement here is essentially of the same type as in that case. The following language used there at page 108 (225 App. Div.) seems to be equally applicable to the present situation: " Under the agreement full power and control was given to the syndicate managers, even with respect to a change in personnel. The subscribers practically received nothing but the right to a *pro rata* share of whatever profits might be realized. The syndicate managers, therefore, were liable on contracts in general, and in particular upon the agreement here sued upon. They themselves seem to have realized their true relation, for, in the tripartite agreement, whereby the syndicate took over Mackie's rights from the Chemical Corporation, it was distinctly provided that the managers were not in any way to be personally liable by reason of such agreement. If they had been acting merely as agents for the subscribers, there would have been no need of thus personally exculpating themselves."

True, there is no provision here for a change in personnel reserved in the managers, as in the Byrnes agreement. Probably no provision therefor was made because the life of the syndicate was of short duration. Nevertheless it is hardly fair to infer that the syndicate managers were agents removable at will. In any event their power was coupled with an interest. There are other features, however, which strengthen the argument that the subscribers were mere beneficiaries of the trust. Their liability was limited to the sum of $5,000. Who was to guarantee that limitation? Unquestionably the managers undertook to control the operations in such a way that the subscribers would not be called upon to contribute more than that sum. They certainly could not look toward each other for reimbursement. The apportionment and distribution of the avails of the syndicate, as made by the managers, was to be final and conclusive upon the participants. Surely no agents would have any such absolute authority. Even if they were officers of a corporation of which the subscribers were stockholders — in which event surely the liability of the latter would not exceed the amount contributed by them — no such absolute power would reside in them.

The plaintiff seeks to draw further distinction by pointing out that in the *Byrnes* case the agreement was between the managers as parties of the first part and the subscribers as parties of the second part. I do not believe that this distinction is more than a matter of form. Nor is it important that no certificate of participation was issued to the subscribers here as in the other case. Unless, therefore, some element of estoppel is shown which bars the subscribers from denying their liability to the plaintiff as joint adventurers, the complaint must be dismissed as to them. The evidence points to a knowledge by the plaintiff, either actual or constructive, of the terms of the agreement. While the managers called meetings of the subscribers and while some of them participated in conferences with the plaintiff in connection with the question of liquidation of the loan, the evidence falls short of any assumption of an obligation by the subscribers toward the plaintiff.

This leaves for consideration the question of the liability of defendants Davidow and Eisenberg as syndicate managers, along with Bedell, who signed his name as chairman of the syndicate. There is evidence that Bedell was given authority by the other two managers to purchase and sell stock without them. That, of course, connoted permission to hold the stock when purchased. The managers had been given the right to borrow. That power would ordinarily be exercised only to effectuate purchases and sales, or to permit continued holdings. The three are indissolubly welded. When the power to act alone in the purchase was given, it conveyed with it the power to hold, and that power involves the power to borrow in order to hold. Does the fact that the loans were made a few days subsequent to the expiration of the syndicate agreement change the situation? I think not. The managers had assumed a liability toward the subscribers, in the sense that the obligation of the latter was limited to $5,000. If the former had attempted to liquidate the stock at the time of the expiration of the agreement, they would have broken the market and probably incurred a loss which they were trying to avoid. Orderly liquidation involved the necessity of continuing to hold, and thus involved the necessity of borrowing. The managers, outside of Bedell, were just as interested in saving the syndicate from loss as Bedell was.

My conclusion, therefore, is that the complaint should be dismissed as to the defendants other than Bedell, Davidow and Eisenberg, with costs to each group or individual appearing by a separate attorney, and that a verdict be directed in favor of the plaintiff against defendants Bedell, Davidow and Eisenberg in the sum of $17,284.41, with costs. Twenty days' stay of execution to all parties and sixty days to make a case.